ALMON BRAINARD & another *vs.* THE CONNECTICUT RIVER RAILROAD COMPANY.

The bill in equity, provided by *St.* 1849, *c.* 222, § 5, for enforcing the orders of county commissioners, respecting the manner of constructing a railroad where it crosses a public highway, can be maintained only by the mayor and aldermen of the city, or the selectmen of the town, within which the way is situated, and not by any individual inhabitant of such city or town, although he is owner in fee simple of the land over which the way is located.

THIS was a bill in equity, under the act of 1849, *c.* 222, § 5, to compel the defendants to comply with an order of the county commissioners, for the building of a bridge as a part of a certain highway crossed by the defendants' road in the village of Greenfield.

The bill alleged that the defendants, a corporation duly established by the laws of this commonwealth, in their location and construction of their road, crossed a certain highway or road situated in Greenfield, commonly called or known by the name of Newton Place, in the fee simple of which the plaintiffs were part owners, bounded as particularly

described in the bill, and, among other boundaries, by "the old burial ground," so called; that said road had been used as a common road to the lots adjoining it, and was to be kept open and occupied for that purpose, and also to be used as a common way from the town road to the old burial ground, for all persons; that the defendants, by the construction of their railroad, by excavations and embankments, had rendered said road wholly impassable, and of no use for the purposes aforesaid, and to the great injury of the plaintiffs, who owned lands on each side of said railroad; that the defendants presented their petition to the county commissioners, in December, 1847, stating therein that they had located their road through Greenfield and certain other towns, crossing highways in the same, and praying the commissioners to view the line of the railroad, and the several crossings mentioned, and to make such order concerning the same, as the public good, in their opinion, might require; that upon their petition, and after due proceedings, the commissioners made, among other orders, the following: "The Newton Place, in the village of Greenfield, to cross over said railroad. Said company to build and forever maintain a good bridge, thirteen feet wide, and said railroad at the present grade of the street;" that the defendants had hitherto wholly neglected to comply with the requisitions of this order, by means whereof the plaintiffs had been greatly injured by reason of being deprived of the use of the road, as a passage to and from their lands on each side of the railroad, and also deprived of a convenient access from the west side of the railroad, to the business part of the village of Greenfield, which the plaintiffs were justly entitled to, and the public deprived of a convenient access to the old burying ground, for want of a crossing in compliance with the order of the commissioners. The prayer of the bill was for a specific performance by the defendants of the order of the commissioners, and for other relief.

The defendants demurred to the bill, assigning for cause, among others, that the court had no jurisdiction to enforce the specific performance prayed for.

*C. P. Huntington,* for the defendants.

*A. Brainard*, for the plaintiffs.

The opinion was delivered at the September term, 1852.

BIGELOW, J.   This bill is brought under *St.* 1849, *c.* 222, § 5, by which jurisdiction in equity is given to this court, to compel railroad corporations to raise or lower any turnpike, highway, or town way, when the county commissioners have decided, in due and legal form, that such raising or lowering is necessary for public security; and to compel railroad corporations to comply with the orders, decrees and judgments of county commissioners, in all cases touching obstructions by railroads in any of such ways.

The bill sets out, with sufficient distinctness, that the way, which is alleged to be obstructed by the defendants, by their failure to erect a bridge over their railroad, in compliance with an order of the county commissioners, is a highway or common road.   Indeed, without such averment in the stating part of the bill, no case within the equity power of the court would be set out; because, by the express terms of the *St.* of 1849, § 5, above cited, the jurisdiction in equity is limited to cases of turnpikes, highways and town ways.   Under this provision, it is clear that the court have no power to enforce any order of the county commissioners in relation to a merely private way.

Assuming, therefore, that in this particular the bill is rightly framed, and duly sets out a way within the terms of the statute, so as to give this court jurisdiction in equity, the important question remains, whether the present plaintiffs have any right to maintain a bill in their own names, for the purpose of enforcing, as against the defendants, the decree of the county commissioners, set out in the bill, in relation to the mode of constructing their railroad in crossing the public way in question.   If they have no such right, then the demurrer is well taken.   Story Eq. Pl. § 541.

The section of the statute of 1849, conferring equity jurisdiction in cases of this kind, makes no provision as to the parties by whom the remedy given is to be enforced.   Upon recurring to the statutes, which have been passed relative to the mode of constructing railroads in crossing highways and

town ways, so as to adapt them to each other, it will be found that the right of making application to the county commissioners for any order and decree regulating the mode of constructing such crossings, is given only to railroad corporations, and to the selectmen of towns, or mayor and aldermen of cities, in which the ways are situated. Rev. Sts. *c.* 39, §§ 67, 68; *St.* 1846, *c.* 271, § 2. These statutes relate to the original construction of railroads in crossing public ways. So in the statute of 1842, *c.* 22, which was intended to give authority to the county commissioners to compel railroad corporations to change the construction of their roads which originally crossed highways on a level, by making them cross over or under the same, the power of making application to the commissioners was given exclusively to the selectmen of towns, and the mayor and aldermen of cities, who act, in all their proceedings under this statute, in their official capacity, for the town or city, and as their agents. *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 424. Under these provisions, individuals, in their private capacities, have no power to apply to county commissioners to make any order or decree respecting the mode of constructing railroads in crossing public ways. The legislature intended to vest in the mayor and aldermen of cities, and the selectmen of towns, the care and charge of the public interest touching such matters. This is in entire harmony with all other legislation in regard to public ways. The present plaintiffs therefore had no right or authority to apply to the county commissioners for the decree set out in their bill, respecting the mode of crossing the highway in question by the railroad of the defendants. That could only be done by the corporation itself, acting for its own interests, or by the selectmen of the town of Greenfield, representing the interests of the public. The decree was in fact passed, as alleged in the bill, upon the petition of the defendants themselves. If then the plaintiffs had no right to apply for the decree, and were not in any form parties to the proceedings by which it was obtained, surely they cannot ask to have it enforced. It would be an anomaly in judicial proceedings,

43 *

to enforce a judgment at the instance of those who were neither parties or privies to the proceedings.

It was urged in argument, that the statute of 1849, *c.* 222, §§ 1, 2, was intended to give to individuals the right to make application to the county commissioners, in certain cases, respecting the crossing of public ways by railroads. And so undoubtedly it was. But that right is confined expressly to cases arising under Rev. Sts. *c.* 39, §§ 79, 80, relating to the erection and maintenance of gates and the stationing of agents at such crossings ; and does not extend to the mode of constructing a railroad for the purpose of crossing a public way. The case stated in the plaintiffs' bill is of the latter kind, and does not come within the provisions of St. 1849, §§ 1, 2.

It appears to us, therefore, that it would be contrary to the whole course of legislation on this subject to hold that the statute of 1849, *c.* 222, § 5, conferred any right on individuals in their private capacities, to seek, by a bill in their own names, the enforcement of the decrees of county commissioners respecting the mode of constructing railroads in crossing public ways.

There is another view of the case, which leads to the same result. The general rule of law is well settled, that individuals cannot enforce a public right, or redress a public injury, by suits in their own names. When they suffer a wrong or sustain a damage in common with other members of the community, no personal right of action thereby accrues. The private grievance is merged in that of the public, and a remedy must be sought either by a public prosecution, or by a suit in the name of some one officially empowered to vindicate the rights of the public. So strictly is this held, that when one sustains an injury in common with the public, although from the circumstances in which he happens to be placed he may suffer more frequently or more severely than others, he has no individual right of action. It is only when he suffers some special damage, differing in kind from that which is common to others, that a personal remedy accrues to him ; and

certainly no rule of law rests on a wiser or more sound policy. Were it otherwise, suits might be multiplied to an indefinite extent, so as to create a public evil, in many cases much greater than that which was sought to be redressed. *Stetson* v. *Faxon*, 19 Pick. 147; *Proprietors of Quincy Canal* v. *Newcomb*, 7 Met. 276; *Smith* v. *Boston*, ante, 255. The same rule is recognized and applied in cases where equitable relief is sought, as well as at law. A recent case in England, *Soltau* v. *De Held*, 2 Simons, N. S. 133, contains a full discussion of this subject; and the principle is clearly stated, and the authorities sustaining it are fully reviewed in the elaborate judgment of the vice chancellor. Applying this well settled principle to the case at bar, it will be found that the bill sets out no special injury or damage to have been sustained by the plaintiffs. It only avers that a public way has been obstructed by the acts and omissions of the defendants, by means whereof the plaintiffs have been deprived of convenient access to their lands, and of a ready communication with the village. But this is an inconvenience or damage, greater perhaps in degree to the plaintiffs than to many others, (although no such averment is made in the bill,) but of the same kind with that sustained by the public. The case, therefore, which the plaintiffs set forth in their bill, is not one of a private or personal nature, in which they seek redress for an infringement of their individual rights, or security against any special injury or damage; but one of a public nature, in which the complainants seek to enforce a decree, which they had no power to apply for or procure, and in which they have no other right or interest than that which belongs to them in common with the whole public.

Besides; if there were no other objection to the bill, it would be fatal to its maintenance in its present form, that it is brought by the plaintiffs in behalf of themselves only, and not in behalf of all other persons in interest. Story Eq. Pl. § 126.                              *Bill dismissed.*